Joseph Y. Avrahamy, Esq., (SBN: 150885)
**LAW OFFICES OF JOSEPH Y. AVRAHAMY**
16530 Ventura Boulevard, Suite 208
Encino, California91436
Telephone Number:(818) 990-1757
Fax Number: (818) 990-1955
Email: javrahamy@jyalaw.com

Attorneys for Plaintiff,
JOE JACOVO

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JOE JACOVO,<br><br>                    Plaintiff,<br><br>vs.<br><br>CARMINA NACORDA; JESSICA CACERES; LOS ANGELES UNIFIED SCHOOL DISTRICT; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>                    Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **First Cause of Action for Violation of First Amendment and Fourteenth Amendment of United States Constitution Against Individual Defendants**<br><br>2. **Second Cause of Action for Violation of First Amendment and Fourteenth Amendment of United States Constitution against Los Angeles Unified School District**<br><br>*DEMAND FOR JURY TRIAL* |

-1-
COMPLAINT FOR DAMAGES

**PLAINTIFF JOE JACOVO, HEREINAFTER REFERRED TO AS "PLAINTIFF", ALLEGES AS FOLLOWS FOR CLAIMS FOR RELIEF HEREIN:**

**I**

**JURISDICTION**

1.    This is an action for deprivation of civil rights under color of state law brought pursuant to the Title 42 United States Code Section 1983, for remedies for Defendants' deprivation of Plaintiff's civil rights.  By this action, Plaintiff seeks all relief to which he may be entitled, under both state and federal laws, including but not limited to compensatory and punitive damages, attorneys' fees and costs, and prejudgment interest.  Jurisdiction of the subject matter of this action is established in this court pursuant to 28 U.S.C. Section 1331 and 1343, and over supplemental claims for relief arising under state law pursuant to 28 U.S.C. Section 1367(a).

**II**

**VENUE**

2.    Venue lies in this Court pursuant to 28 U.S.C. Section 1391(b)(1) and (2).

**III**

**CLAIMS FOR RELIEF**

3.    Plaintiff, Joe Jacovo, is an individual who at all times mentioned herein resided in the State of California.

4.    Plaintiff is informed and believes and based thereon alleges that Defendants, and each of them, were and now are residents of the State of California.

5.    Defendants Carmina Nacorda and Jessica Caceres and Does 1 through 10, Inclusive, were residents of the State of California, and were employees and representatives of Los Angeles Unified School District. Carmina Narcoda serves as the Principal of Fairfax High School, where the Plaintiff was employed. Jessica

COMPLAINT FOR DAMAGES

Caseres, serves as the Vice Principal at Fairfax High School. At all times relevant hereto, said Defendants were acting within the course and scope of their employment. The wrongful acts hereinafter described flow from the very exercise of their authority. Each Defendant named herein is sued in his/her individual and official capacity.

6. Plaintiff is informed and believes and based thereon alleges that the Los Angeles Unified School District (LAUSD) is a government entity that operates and maintains Fairfax High School (Fairfax), where the Plaintiff was employed as a high school teacher.

7. Plaintiff is informed and believes and based thereon alleges that at all times herein mentioned, Defendants and DOES 1 through 10, inclusive, were employed by or were agents of LAUSD. Plaintiff is informed and believes that DOES 1 through 10, inclusive are residents of County of Los Angeles, State of California.

8. At all times herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant named and unnamed in this complaint.

9. The true names or capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Each Defendant is sued individually and in his/her official capacity as defined in the present complaint. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

10. Plaintiff is informed and believes and thereon alleges that, at all times mentioned, each of the Defendants, including the fictitiously named Defendants,

COMPLAINT FOR DAMAGES

was the agent and employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope and course of such agency.

## IV

## STATEMENT OF FACTS

11.   Plaintiff realleges and incorporates by reference, as though fully set forth herein, each and every allegation set forth in paragraphs 1 through 10, inclusive.

12.   Plaintiff has been employed by Los Angeles Unified School District as a High School teacher at Fairfax High School for over 18 years. Plaintiff consistently received glowing reviews from his students, their parents and other faculty and was a highly regarded and appreciated teacher. Plaintiff was dedicated to his career and looked forward to a lengthy career as a teacher, the career of his choice.

13.   In the LAUSD Parent-Student Handbook, there is a section which provides the rules and procedures for the school's ability to search students. The handbook provides as follows:

**STUDENT SEARCHES**
The 4th Amendment of the United States Constitution protects individuals from unlawful searches. However, the law allows school officials to conduct searches of students under certain limited circumstances.
A. Searches Based on Reasonable Suspicion
If a student has engaged in conduct that causes an administrator to have *reasonable suspicion* that the student has committed, or is
about to commit, a crime or has violated statutory laws or school rules, the administrator may conduct a search of that student. The administrator must:
• Be able to articulate the reason for his or her suspicion and the facts and/or circumstances surrounding a specific incident.
• Be able to reasonably connect the student to a specific incident, crime or rule or statute violation.

-4-
COMPLAINT FOR DAMAGES

• Have relied on recent, credible information from personal knowledge and/or other eyewitnesses.

• Ensure that a search based on reasonable suspicion is not excessively intrusive in light of the student's age and gender and the nature of the offense.

When conducting a student search based on reasonable suspicion, school officials must adhere to the following practices:

• Conduct the search only if there are clear and specific reasons for suspicion and there are facts that connect the student to a specific incident of misconduct.

• Jackets, purses, pockets, back packs, bags, and containers in the student's possession may be searched to the extent reasonably necessary.

• Under no conditions may a body or strip search be conducted.

• Only school officials of the same sex as the student being searched may conduct the search.

• Searches based on reasonable suspicion must be conducted in a private area where the search will not be visible to other students or staff (except for a school administrator or designee witness, also of the same sex).

B. Random Metal Detector Searches

California courts and the California Attorney General's Office have approved the use of random metal detector searches for weapons.

Random use of metal detectors is appropriate only if:

• The method of selection of students to be searched is genuinely random.

• Students selected to participate in random metal detector searches are selected without regard to personally identifiable characteristics such as race, gender, surname, group affiliation, or past history of misconduct (i.e., selection is random).

• The searches are minimally intrusive.

• School officials provide parents and students with advanced and detailed notice of the random metal detector search procedures.

If, as a result of a metal detector search, *reasonable suspicion* arises that a particular student may have a weapon, school officials may conduct a search of that student, in a private area, in accordance with the above guidelines for reasonable suspicion searches.

14. On March 9, 2015, while Plaintiff was teaching a class of 33 students, Vice Principal Jessica Caceres, three armed Los Angeles Unified School Police Department (LAUSPD), with a K-9, Dean of Discipline Suzanne Drake, and Mr. Howard, a School Security guard, entered the Plaintiff's classroom. Jessica

-5-

COMPLAINT FOR DAMAGES

Caceres stood in front of the students with two LAUSPD Officers at her side, while the K-9 unit officer with a German Shepherd positioned himself inside the door. The security guard and the Dean of Discipline were positioned outside the door. Jessica Caceres then immediately commanded the students to put their hands on the desk. Ms. Caceres then instructed the students to hand her any illegal property or possessions, and told them that if they do not hand it over, they will be dealing with the police if any contraband or questionable items are discovered. Ms. Caceres then directed the students not to touch anything and to step outside. The students were also ordered to leave their cellphones. After the students stepped outside of the classroom, the search was conducted inside the classroom.

15.    Following the search the students in the classroom were visibly upset, and as a teaching tool, Plaintiff suggested that they write letters to express their feelings about the manner that the search was conducted.

16.    Plaintiff who has been working for Fairfax High School and was aware of the search procedures as provided in the handbook, was also shocked and disturbed not only by the manner that the search was handled but also by the threatening and accusatory manner that Ms. Caceres spoke to the students, while armed police officers and a K-9 officer accompanied her.

17.    While understanding that there are circumstances that permit the school to conduct random searches, Plaintiff was concerned about the legalities of the March 9, 2015 search and whether it was in compliance with the policies and procedures as provided in the handbook. Specifically, the Plaintiff who was aware of the policy that the school must provide parents and students with advanced and detailed notice of the random metal detector search procedures knew that no such notice was provided before the March 9, 2015 search and of the procedures used during the search.

18.    On the same day as the search, Plaintiff spoke to Vice Principal Mark Ross, and expressed his concerns about the manner that the search was handled

-6-

COMPLAINT FOR DAMAGES

and whether the search was legal and in compliance with school policies. Plaintiff spoke to the Vice Principal, because the school principal, Principal Nacorda was off that day. During that meeting, the Plaintiff also handed the students' letters, written to express their feelings about the search to the Vice Principal's assistant.

19.    On March 10, 2015, during a nutrition break, Plaintiff approached Vice Principal Jessica Caceres and expressed his concerns about the manner that the search was conducted by her and the officers the previous day. Plaintiff expressed that in the manner that search was conducted, it could possible infringe on the student's civil rights and be a liability to LAUSD. Ms. Caceres was unreceptive to the concerns raised by the Plaintiff.

20.    On March 11, 2015, Plaintiff placed a copy of the Student Search excerpt from the Handbook referenced above, in the various principals' boxes, as well as the following quote from Benjamin Franklin to accentuate his concerns about the search:

"Those who would give up essential Liberty, to purchase a little temporary Safety, deserve neither Liberty nor Safety."

21.    At lunch time on March 11, 2015, Plaintiff brought cookies to Ms. Caceres to ease any tensions, and asked her if there were documents which authorized LAUSD to conduct the type of search that was conducted on March 9, 2015. Plaintiff showed Ms. Caceres the page from the school handbook about searches. Ms. Caceres responded that there were three big volumes of documents in the main office which authorize the March 9, 2015 search. Plaintiff requested a copy of those books, and inquired how immigrant parents are supposed to know about such search procedures if they are inside three big volumes of books. Ms. Caceres responded by stating, "It is not [her] problem if parents are stupid and uneducated". Plaintiff then suggested that the school demonstrate the manner that the search was conducted in the upcoming Parent Night, so that the parents are provided notice about search procedures as mandated by the school handbook.

COMPLAINT FOR DAMAGES

22. On March 13, 2015, Plaintiff met with Defendant Principal Carmina Nacorda to discuss the March 9, 2015 search. Plaintiff reiterated his concerns that the search may be infringing on the student's civil rights and may be a liability to LAUSD.

23. On March 16, 2015, Plaintiff met with Principal Nacorda about an unrelated matter. During the meeting Plaintiff once again reiterated his concerns about the March 9, 2015 search. Plaintiff expressed that an aggressive search of classrooms can result in tragic consequences if a student is actually armed and scared into committing a desperate act in a room full of students when confronted by a surprise police search.

24. On March 19, 2015, Plaintiff was ill and was absent from school. Plaintiff gave the substitute teacher instructions to have the students perform an evaluation of his pedagogy including things that he could improve upon and develop.

25. On March 23, 2015, Plaintiff was given a note summoning him to see Principal Nacorda during his fourth period conference. In the meeting, Principal Nacorda informed the Plaintiff that he is under investigation due to a teacher complaint and that he is being removed from the classroom. Plaintiff expressed that the timing of his removal from the classroom is highly suspicious and that it reeks of retaliation for speaking out about the search.

26. The only potential teacher complaint that Plaintiff was aware of was an incident with a teacher named Carol Arkenberg, who on March 16, 2015, was heard by students making disparaging remarks about the Plaintiff and informed the students that Plaintiff was wrong about his statements about the search and that the students do not have civil rights. After hearing about Ms. Arkenberg's statements, Plaintiff sent a teacher's assistant with a copy of the Parent Student Handbook and a note stating please review it in order to give students more accurate information about their rights at school. Ms. Arkenberg responded by yelling, "I don't need this

-8-

COMPLAINT FOR DAMAGES

shit. I know the law. You don't have any rights. Mr. Jacovo is a fucking idiot". She then threw the papers back at the Teacher's Assistant. Plaintiff believed that Ms. Arkenberg, who expressed clear hostility towards him, may have been the source of the purported complaint, which the Defendants exploited to use as pretext to remove the Plaintiff from his classroom.

27. On March 24, 2015, Plaintiff was notified that Ms. Caceras, who was the school official that was the main participant of the search that Plaintiff expressed concerns about, was put in charge of an investigation into the conduct of the Plaintiff in the classroom. During this purported "investigation", Ms. Caceras interviewed students with the clear intent of obtaining information that could be used to justify adverse actions against the Plaintiff. Ms. Caceras used improper leading and suggestive questions during interviews to seek information that can be used against the Plaintiff. Plaintiff was informed by a teacher's assistant that witnessed the interrogation tactics of Ms. Caceras that students were fearful of Ms. Caseras, the same school official that threatened them to cooperate during the recent search.

28. On March 24, 2015, Plaintiff sent an email to various LAUSD school officials wherein he complained about his punitive and retaliatory removal from the classroom. The Plaintiff expressed the following:

> The timing of my informal removal from the classroom due to an allegation seems extremely retaliatory in nature. This removal and investigation comes just two weeks after I vehemently protested the overly aggressive search of my classroom and students by numerous school police, a canine unit, a vice-principal and security guard on March 9, 2015.

29. On March 26, 2015, Plaintiff wrote an email to Principal Nacorda where he reiterated his concerns about the search and complained about his retaliatory removal from the classroom. Plaintiff expressed in pertinent part as follows:

COMPLAINT FOR DAMAGES

Ms. Nacorda,
As we have discussed LAUSD and the LAUSD School Police have been conducting contentious, traumatic and possibly unconstitutional, "random" searches and seizures in the classroom.... There is no mention of these K-9 searches in the LAUSD Parent / Student Handbook and no easy access to information online or anywhere else describing these aggressive tactics. These searches are conducted with an assistant principal, dean, security guard, three armed LAUSD Police Officers and a K-9 Unit in the classroom surrounding the students. This is arguably a violation of the students' and teachers' Fourth Amendment Constitutional Rights.:

Plaintiff also included the following statement in the email:

Please investigate this district wide policy which is a possible Civil Rights Violation of our youth and teachers by the LAUSD and LAUSD School Police.

And as further reminder of his rights, the Plaintiff wrote as follows:

Finally, please note that I am protected not only under the LAUSD WHISTLEBLOWER PROTECTION POLICY but also by the California Labor Code Section 1102.5 if this retaliation by LAUSD continues or if there are any measures of disciplinary actions taken against me.

30.    On April 7, 2015, Defendant Nacorda notified the Plaintiff that he was being reassigned and that he is to report to Operations Coordinator Cynthia Williams the next day.

31.    On April 8, 2015, Plaintiff met with Cynthia Williams and was officially notified that he was being removed from the classroom and was being reassigned to Educational Service Center West, also referred to as "Teacher Jail", and was going to be reassigned to his home.

32.    On June 2, 2015, after Plaintiff reached out to his union representatives to assist in the matter, a meeting was held between the Plaintiff, Kim McLaughlin from the UTLA, Principal Carmina Nacorda and LAUSD school

-10-

COMPLAINT FOR DAMAGES

official Cynthia Williams. In the meeting it was revealed that Plaintiff was removed from the classroom because of a teacher complaint that he was "inappropriately speaking about the K-9 search." During this meeting, a list of fabricated allegations were read off to the Plaintiff, which were purportedly based on the tainted and result oriented "investigation" conducted by the biased Jessica Caceres. Plaintiff immediately denied the accusations.

33. During the summer break of 2015, Plaintiff was repeatedly called and ordered to return the keys to his classroom.

34. On August 18, 2015, Plaintiff sent in his response refuting the false allegations concocted by Jessica Caseres, as well as highlighting the conflict of interest of placing Ms. Caseres in charge of the investigation, after the Plaintiff complained about what he believed to be her inappropriate actions on March 9, 2015. In Plaintiff's response, Plaintiff also pointed out that he had suffered from disparate and retaliatory treatment by his removal based on the complaint of Carol Arkenberg. Plaintiff stated that he had previously reported Carol Arkenberg's misconduct, verbal abuse and inappropriate behavior towards students, yet she was neither investigated nor removed from her classroom pending an investigation.

35. In Plaintiff's response, he reiterated his fears of being further retaliated against, and he pointed out his positive influence on students during his tenure at Fairfax High School. Plaintiff pointed out how he has helped countless students who were suicidal, having drug issues, psychological disorders as well as students who were victims of physical and sexual abuse.

36. On August 18, 2015, Plaintiff sent another email to school officials asking about his wrongful removal from his classroom and his reassignment. Plaintiff emphasized that his removal violated his contract and was retaliatory.

37. On August 24, 2015, Plaintiff sent an amended response to Carmina Nacorda that highlighted the blatant contract violations and the retaliation that he

-11-
COMPLAINT FOR DAMAGES

suffered from and demanded that he be returned to his classroom at Fairfax High School.

38.    On August 25, 2015, Plaintiff learned that he is being reassigned and will be disciplined, although the school did not give him proper notice of a disciplinary action and despite the fact that he did not commit any misconduct.

39.    On August 28, 2015, Plaintiff met with Carmina Nacorda and School Official Jan Davis, and he was informed that he is being demoted from a Single Subject Permanent teacher to a "Restricted Contract Pool Teacher." This demotion means that the Plaintiff essentially becomes a substitute teacher that can be moved around by the LAUSD to any assignment, without the right to refuse an assignment and without the status of a senior tenured teacher. With this demotion, Plaintiff learned that he was being removed from his home school of 18 years and assigned to University High School. For the Plaintiff who lived in close proximity to Fairfax High School, and would ride his bike to the school, the "freeway therapy", was devastating.

40.    On September 14, 2015, due to stress and anxiety caused by the retaliation of the Defendants, Plaintiff's physician recommended that he go out on medical leave. Plaintiff was placed on medical leave until January 11, 2016.

41.    On January 5, 2016, Plaintiff's counsel sent a demand letter to the Defendants, demanding that Plaintiff be reinstated to his permanent status and that he be reassigned to his position at Fairfax High School.

42.    On January 11, 2016, Plaintiff's FMLA leave was exhausted and he was granted unpaid medical leave of absence until December 9, 2016.

43.    On December 13, 2016, Plaintiff was instructed to report to a substitute teaching position at Westchester High School. Plaintiff corresponded with the Defendants and reiterated his request to be reinstated to a permanent position at Fairfax High School. Plaintiff's requests were ignored. As a result Plaintiff continued his status of being on unpaid medical leave.

-12-

COMPLAINT FOR DAMAGES

## V.

## INJURIES TO PLAINTIFF

44.     As a result of the aforesaid unlawful acts of Defendants, and each of them, Plaintiff suffered from physical illness and physical injuries and was personally humiliated and has become mentally upset, distressed and aggravated from Defendants' wrongful acts and/or omissions as described herein. Plaintiff has suffered from sleeplessness, depression, anxiety, loss of identity and isolation. Plaintiff's has been humiliated from the defamation and the attacks on his character. Plaintiff also alleges that he lost and will continue to lose income from the adverse actions, lost opportunities, benefits and pension, in an amount to be proven at time of trial.   Plaintiff claims such amount as damages together with interest pursuant to *California Civil Code* § 3287 and/or any other provision of law providing for prejudgment interest.

## VI.

## FIRST CAUSE OF ACTION

## VIOLATION OF FIRST AMENDMENT AND FOURTEENTH AMENDMENT OF UNITED STATES CONSTITUTION (42 U.S.C. §§1983 AND 1988)

## BY PLAINTIFF AGAINST THE  INDIVIDUALLY NAMED DEFENDANTS IN THE THEIR OFFICIAL AND INDIVIDUAL CAPACITY AND DOES 1 THROUGH 10, INCLUSIVE

45.     Plaintiff realleges and incorporates by reference, as though fully set forth herein, each and every allegation set forth in paragraphs 1 through 44, inclusive.

46.     This cause of action arises under Title 42 United States Code, §§ 1983 and 1988 wherein Plaintiff seeks to redress deprivation under color of state law of a right, privilege or immunity secured under the First Amendment and applied to

-13-

the States under the Fourteenth Amendment.

47.    As a result of above described intentional acts and omissions of Defendants Principal Nacorda and Vice Principal Caseres and Does 1 through 10, Plaintiff's constitutional right that is the First Amendment was violated when as a result of Plaintiff engaging in protected speech, Defendants engaged in a pattern of retaliation against the Plaintiff which culminated in the adverse actions described herein.

48.    Plaintiff engaged in speech that was a matter of public concern by speaking about the March 9, 2015 search which he believed may be unlawful, in violation of school policies as provided in the Student Handbook, may cause liability to the School District and may cause danger to students by the actions of a student that may be armed and may react improperly to such a search.   Such matters are considered matters of public concern.

49.    Plaintiff engaged in the First Amendment speech as a private citizen and not as part of his official duties as a school teacher whose duties do not include reporting concerns about random searches conducted at the school.

50.    As described herein, Plaintiff's protected speech was a substantial or motivating fact in the adverse employment action taken against the Plaintiff.

51.    Defendants were aware that Plaintiff engaged in protected speech, and the removal of Plaintiff from the classroom, and his demotion to a "restricted contract pool teacher" was due to his engaging in the protected speech.

52.    There was no adequate justification for Plaintiff, a long time dedicated employee with immaculate performance, to be removed from his classroom, be demoted to the status of a "restricted contract pool teacher" and then be assigned to schools that were long distance from his home, in what amounted to "freeway therapy".

53.    Absent the protected speech of the Plaintiff, the Plaintiff would not have suffered from the adverse actions taken against him, and thus the Defendants

-14-

COMPLAINT FOR DAMAGES

did not have a legitimate reason to take the adverse actions described herein. The purported investigation that was conducted by Jessica Caceres was biased, tainted, subjective, and was based on fabricated allegations which relied on improper questioning of students.

54. The above referenced acts and omissions of the individually named Defendants and each of them, were conducted in their official capacity.

55. Plaintiff is informed and believes and thereby alleges that at all times mentioned herein, the named individual Defendants and DOES 1 through 10, inclusive, and each of them, were duly appointed, qualified and acting agents/employees, of the Los Angeles Unified School District, and that at all times mentioned herein, were acting within the course and scope of such capacities under the color of state law.

56. Defendants and DOES 1 through 10, inclusive, and each of them, failed and refused to intervene or prevent or try to prevent the wrongful conduct of the other.

57. As a proximate result of the aforementioned acts of Defendants, and each of them, Plaintiff suffered from a physical injury and illness, mental anguish, emotional stress and anxiety damages, in a sum to be determined by this Court. Plaintiff also expended medical expenses for treatment for his injuries and claims special damages in a sum to be determined by this Court.

58. As a further proximate result of the aforementioned acts of Defendants, and each of them, Plaintiff suffered from loss of income, loss of future income, loss of benefits and loss of pension benefits in a sum to be determined by this Court. Plaintiff will also seek prejudgment interest for loss of past income.

59. The aforementioned acts and omissions of each Defendant was done by each Defendant knowingly, intentionally, willfully, maliciously or with such callous disregard with purpose of harassment, oppression and infliction of injury upon the Plaintiff. This was done with reckless, wanton and callousness of

COMPLAINT FOR DAMAGES

Plaintiff's civil rights and by reason thereof Plaintiff claims exemplary and punitive damages from Defendants and DOES 1 through 10, inclusive, except Defendant LAUSD in the sum determined by this Court, to deter, prevent and educate said Defendants from ever inflicting such injuries again upon any individual.

60.    By reason of the aforementioned acts and omissions of Defendants, and each of them, Plaintiff retained attorneys to represent him and did incur investigation costs, expenses, attorneys' fees, and legal costs. Plaintiff requests payments by Defendants, and each of them, for compensation of fees and costs pursuant to Title 42 U.S.C. § 1988.

## VII.
### SECOND CAUSE OF ACTION
### MONELL CLAIM FOR VIOLATION OF THE FIRST AMENDMENT AND FOURTEENTH AMENDMENT AGAINST LAUSD

61.    Plaintiff refers to and incorporates by reference the allegations in Paragraphs 1 through 60, inclusive, as if set forth in full here.

62.    Defendants Los Angeles Unified School District is alleged to have maintained a policy permitting the occurrence of the type of wrongs described herein, and based on the principal set forth in *Monell vs. New York City Department of Social Services* (1978) 436 U.S. 648 and *Heller vs. Bushey* (9th Cir. 1985) 759 F.2d 1371, is liable for all injuries sustained by Plaintiff.

63.    In perpetrating the above referenced acts and omissions, the Defendant LAUSD was at all relevant times herein, a public entity.

64.    Plaintiff's civil rights were violated under 42 U.S.C. § 1983 when as a result of a policy, custom and practice of LAUSD, as promulgated by the LAUSD's policy makers, Principal Nacorda and Vice Principal Caceres. Plaintiff's first amendment rights were violated when he was retaliated against as

set forth herein.

65.   The conduct of the Defendant LAUSD as stated herein, and the violation of the civil rights of the Plaintiff was the product of a policy to retaliate against the Plaintiff for engaging in protected speech. By approving and participating in the wrongful and retaliatory demotion of the Plaintiff, the policymakers ratified the unlawful actions of its subordinates and thus Defendant LAUSD is liable under *Monell vs. New York City Department of Social Services* (1978) 436 U.S. 648.

66.   As a result of the above described intentional acts and omissions of Defendant LAUSD, Plaintiff's constitutional rights, that is, the First and Fourteenth Amendments were violated when Plaintiff suffered from adverse employment actions as described herein.

67.   As a proximate result of the aforementioned acts of Defendants, and each of them, Plaintiff suffered from a physical injury and illness, mental anguish, emotional stress and anxiety damages, in a sum to be determined by this Court.

68.   As a further proximate result of the aforementioned acts of Defendants, and each of them, Plaintiff suffered from loss of income, loss of future income, loss of benefits and loss of pension benefits in a sum to be determined by this Court.

69.   By reason of the aforementioned acts and omissions of Defendants, and each of them, Plaintiff retained attorneys to represent him and did incur investigation costs, expenses, attorneys' fees, and legal costs. Plaintiff requests payments by Defendants, and each of them, for compensation of fees and costs pursuant to Title 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff prays for judgment on all causes of actions against the Defendants as follows:

1.   For general damages in an amount according to proof;

COMPLAINT FOR DAMAGES

2.   For special damages in an amount according to proof;

3.   For punitive damages in an amount appropriate to punish the Individual Defendants, for their wrongful conduct. Punitive Damages are not sought against Los Angeles Unified School District.

4.   For attorneys fees pursuant to Title 42 of the United States Code, Section 1988(b);

5.   For costs of suit herein incurred;

6.   For injunctive relief;

7.   For interest allowed by law; and

8.   For such other and further relief as the Court may deem just and proper.

Dated: March 3, 2017          **LAW OFFICES OF JOSEPH Y. AVRAHAMY**

By: _____
JOSEPH Y. AVRAHAMY, ESQ.
Attorneys for Plaintiff,
JOE JACOVO

## DEMAND FOR JURY TRIAL

The Plaintiff in the above entitled action request a trial by jury pursuant to Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  March 3, 2017          **LAW OFFICES OF JOSEPH Y. AVRAHAMY**

By: _____
JOSEPH Y. AVRAHAMY, ESQ.
Attorneys for Plaintiff,
JOE JACOVO

-18-
COMPLAINT FOR DAMAGES